May it please the court, Davina Chun on behalf of Gerald Williams Appellate. I'd like to reserve two minutes for rebuttal. Okay. This court should reverse the judgment and dismiss this case for two separate and independent reasons. First, the judgment is based on a violation which occurred on January 31, 2011, well after Mr. Williams' eight-year term of supervised release had expired. And second, even if this court were to accept the government's invitation to fine fugitive tolling, which it asserts for the first time on appeal, and which requires this court to accept as facts allegations that the government elected twice not to prove, this court should nevertheless reverse and dismiss because no timely warrant was issued. When you say the government elected twice not to prove, could you tell me those two occasions? I'm trying to figure out whether the government's waived. The government obviously doesn't want to waive. So tell me the circumstances in which they had the opportunity and they declined. The first time would have been at the 2001 hearing. The first period of fugitive tolling that the government claims is a period between 1999 and 2001 in which they said that Mr. Williams had absconded from supervision. They issued a warrant in 2000, and there was actually a warrant, and he was detained and he was brought to court. And in 2001, the government dismissed unconditionally that petition. Now, that petition specifically alleged absconsion, and the government dismissed the petition citing evidentiary problems. And at the end of that, I mean, that was the hearing in front of Judge Tashima, correct? That's correct. That's the first hearing. And they simply dismissed, and it looked as I read that, it looked as though it appeared that the government was going to impose an additional condition, and then it turns out they didn't, so we just dismiss, right? Right. That's the case number. It looked like possibly someone had at some point suggested imposing an additional condition. Right, but it was very clear that it's not, and then Judge Tashima, don't spit on the sidewalk, behave yourself, or you'll be back here. Exactly. But there was no extension of the time period of the supervised release at that point. As far as I can tell, there was nothing there that Judge Tashima said, Well, listen, it's been told now, and it's not going to end at the earlier date. It's going to now end at a later date. Nothing like that? Nothing like that. Okay, second time. What's the second time that the government had the opportunity? Okay, so then the second time, the probation office submits a petition and a warrant alleging illegal reentry in 2003. And again, a detainer is lodged, and Mr. Williams is detained. He's in county jail, but he can't bail out because he's got this detainer on him, right? He's got the federal detainer. After two years in county jail, he finally pleads People v. West to basically time serve, and then he's brought over to federal custody. At that point, when he says, No, I didn't commit that first violation, which is the reentering in 2003, and the government dismisses again. So that would be, I would say, the second time that they deliberately elected not to prove the very facts of which they're seeking this court to accept as true now. That was allegation one of the two allegation violation reports. Yes. Yes. So again, not only did they have the opportunity to prove that as fugitive tolling at that time, they had the opportunity to prove that allegation. And if they had chosen to prove that allegation, we really wouldn't be here because it's, well, there would be a couple of questions as to whether there was jurisdiction as to allegation one, the first being whether the warrant was even issued with probable cause, because if you read the petition, it says, like, I'm not really sure if he was deported. I'm not really sure what his status is. So that would be the first question. The second was whether the hearing was timely. But they elected not to proceed on that. If they had elected to proceed on that, the jurisdiction question would be much cleaner, and the court could, if it wanted to, have considered all the other alleged conduct as relevant in determining a sanction. But the government elected not to. So not only did they elect not to, when they were at it, the defendant specifically asserted, there's no jurisdiction, it's been too long. I mean, he was pro se, and yet he said repeatedly, it's been, like, 23 years, it's been eight years. And the government relied solely on 3583I. This is now the final hearing that, yeah, yeah, right. Yes. And 3583I applies only to cases where the supervised release has already expired. So by relying on 3583I, the government was implicitly saying, I agree, the supervised release has expired. There's no other reason to rely on 3583I. It applies only in cases where supervised release has already expired. Right. So in my view, the issue is totally waived. Okay. Assuming it's waived, then what? Well, if it were waived, then clearly the January 31, 2011 violation cannot be a violation because Mr. Williams' supervised release expired in 2005. Right. So this Court wouldn't even need to reach the second question of whether the warrant that was issued in 2003 retained jurisdiction for the adjudication of the 2011 violation. It wouldn't even need to reach that question because the 2011 violation couldn't be a violation because it didn't occur during supervised release. Okay. And you're not mentioning that, but you've also got this argument about self-representation, that FRERETA, and so on. I've got that, but I think the Court only needs to reach that issue if it doesn't dismiss the case. Okay. Fugitive tolling. Yes. Do you dispute there was fugitive tolling between December 1999 and May of 2001? Absolutely I would dispute that. What appears to have happened was that Mr. Williams self-deported on November 6 of 1999. Now, we don't know that because there's no evidence in the record because the government chose not to prove it, but it's a little bit odd. Part of the evidentiary problem that was perhaps referenced earlier in why they chose not to prove it. It was an evidentiary problem. One of the major evidentiary issues being that it appears that the probation office thinks he self-deported on June 11, that is 6-11, as opposed to November 6, which is 11-6. If it's disputed, and you're saying that the probation officer's sworn statement wasn't enough, that you disputed what was said in that statement, there was no opportunity for a presentation of that evidence, correct? And it's too late and you win anyway? Well, I guess the issue is should there be a remand? But it seems to me that there's three answers to that question. The first is the government doesn't even seek a remand. They seek affirmance on the record. They do not say, please give us another opportunity to prove this. Second, it's sort of a matter of first principles that the government, when there's a dispute, is supposed to come forward and actually prove something rather than just dismiss it. And so, for instance, in Vargas Amaya, the resolution in that case was not, this is a case in which the Ninth Circuit found that 3583I warrants had to be sworn. The resolution in that case wasn't to remand for the government to find some other way to prove jurisdiction. It was simply to dismiss. And then thirdly, frankly, in order for, let's say the purpose of a remand would be to allow the government and the probation office to do something to establish jurisdiction, okay? If we can assume that the 1999 to 2001, they really, I mean, they had evidentiary problems. They can't prove that. Then in order to get jurisdiction, they would need to prove fugitive tolling from 2003 to 2009. So that would be the first thing they have to prove, which they already elected not to prove. They would then have to predate the 2011 conviction, which is what the violation was. It's what the PO chose to allege. The government repeatedly refers to the conviction as a violation, and our client only admitted that as a violation. They would have to predate that from 2011 back to 2009, okay? After having elected to choose to allege it as a 2011 violation, they now want to call it a 2009 violation, okay? And then they would have to go back on their own policy, which in the Central District of California is that you do not allege violations that occur during a period of tolling. So they've called this tolling, but now they want to allege a violation that occurred during that time period. That's their policy. I don't have a position on whether that's a correct policy or not, but it is their policy. And finally, they would have to persuade this Court that 3583I allows revocation on a violation that was not even contained in the warrant, which they say is the thing that extends the – so it seems to me like they could have done all this in the first instance. It's a little bit of gamesmanship, especially against a pro se defendant, to allow them to go back to take these five steps which they need to take in order to prove jurisdiction. Well, let's hear from the government. I assume the government has answers to all of this. Thank you, and may it please the Court, Ronnie Katzenstein on behalf of the United States. Let me start with the issue of waiver, which I believe is of interest to the Court. In the district court, the government always took the position that the defendant-supervised release proceedings were properly before the district court. The issue of the expiration of defendant supervision came up in the middle of the hearing, in the hearing which was ostensibly about self-representation. Then the defendant raised that issue. It was at – halfway through the hearing at ER 29 for the first time. The Court then stated the term of supervision – your term of supervision hasn't expired. That was stated before the government was even asked about its position. So the defendant makes an objection. The court rules against without having heard any evidence from anybody. Is that what you're telling us? Well, the Court had before it all of the evidence that was in the sworn statements of the probation officer setting forth the chronology of events. The Court stated that it had read the file. It was aware of all of the matters that were before it. And I would suggest that here, this is not an instance where the government made a knowing relinquishment of an argument, where it was strategic in relinquishing an argument, which is what constitutes a waiver. Let me ask you this, if I can. I think it's accurately described that in the papers we have in front of us filed in this Court, you have not – the government has not asked for a remand. Is that correct? Well, if the government believes that – First, is it correct that you have not at this point yet asked for a remand? We have asked for affirmance in our papers. That's correct, Your Honor. Right. But I would say if the Court feels that there's been an insufficient – that there are insufficient factual findings by the district court, we would ask for a remand for those factual findings. Likewise, on the representation issue, if the Court feels that there was some infirmity there, we would ask for a remand with respect to that. I would like to draw – Well, the representation probably could be cured if there's a remand and he's represented. I mean, I think that would then – that would wash out. Yes. Yeah. I would like to say with respect to the waiver issue, I would like to point the Court to a case that I believe is somewhat analogous, and that's the Davey-McDonough case in the Supreme Court, where the government miscalculated the time, the amount of time that excluded – was excluded under the – for a habeas petition to be filed, and it did not raise a statute of limitations argument with respect to a habeas petition that was filed. And the Supreme Court said, well, that was a mistake. The government has not made a strategic or knowing relinquishment of an argument. It made an error. And the Supreme Court went ahead and corrected that. And here I would say what happened in the district court is analogous to what happened in Schimmel, which is a Seventh Circuit case, where the defendant claimed in the district court, in an oral representation, the defendant made a statement that there was no jurisdiction for his case under a specific statute. And the court asked the government to respond. The government did respond. It said, no, that statute applied. The court then asked for a briefing, and in the briefing, the government raised a different statute. On appeal, the defendant said the reference to the second statute had been waived by the government because it didn't raise it in its initial oral argument. Let me ask you this, if I can. There are a couple of layers to the waiver argument. One of them is not what happened at this last hearing in which Judge Rubin said there's been a violation of supervised release, but that there was a different kind of waiver in front of Judge Tashima when he was brought in, and that was then dismissed. And there was a possibility, I think, of extending the time of supervised release at that time because prior to coming in in front of Judge Tashima, at least you're now saying he was out of the country, and therefore there was tolling. But there was no extension of the time of supervised release at that time. The supervised release was simply imposed the same way it had been before. Hang on a second. I think one possible reading of what happened in front of Judge Tashima when the government simply elects to dismiss is that while there was a possibility for extending the time of supervised release, and I think upon proper fact-finding, Judge Tashima could have done that upon request by the government, such that he would then have been on notice that your supervised release time is extended from X to Y. That didn't happen. So how do you get to count as tolling time the period preceding that hearing in front of Judge Tashima? I believe what happened in front of Judge Tashima was a petition for revocation was filed based on the fact that the defendant had failed to report a grade C violation. All that the record shows with respect to that proceeding for Judge Tashima is that that petition was dismissed. In other words, the supervised release period was not revoked and there was no question about imposing more supervision or changing the terms. The question before this Court is what was the record in the district court for this proceeding and did that record establish by a preponderance of the evidence that there was tolling sufficient to mean that the supervised release period extended until the time of the hearing? And I would suggest that it did. The argument that the fact that the government didn't proceed in the 2000, with the 2000 petition, or that it didn't, that there was a dispute whether or not he self-deported are, those are allegations, but the evidence, the sworn evidence before Judge Liu was that the defendant last reported in November of 1999. That was the probation officer's sworn statement based on his own recipient experience of the failure of the defendant to report. And the fact that he then subsequently stated, well, I self-deported and therefore you shouldn't consider that time as fugitive time. The Court, the record, that fact or that allegation or assertion doesn't reset the balance of the preponderance of the evidence given that the defendant never produced evidence, although he was requested to do so, to the probation officer that he had self-deported to Belize. He was asked for that proof. He never provided it at any point. In addition, there was evidence, the sworn statements of the probation officer, that he had gone to Belize in June of 99. We know he was back by at least November of 99. He went to Belize. He was deported, officially deported to Belize in February of 2003. He was back in the country by November. Given all of that evidence, it is fair to say that the preponderance of that evidence suggests that he did not self-deport and that it's appropriate to view that first period as a told period because of his fugitive status. Well, it seems to me that if we were to remand, you could make all those arguments in front of Judge Liu, but you made none of those arguments in front of Judge Liu. So you're asking us simply to say, to affirm. I don't see how we possibly can affirm based on what we have here in front of us. Because the argument you made in front of Judge Liu was based upon this subsection I, which pretty clearly doesn't apply. Well, again, Your Honor, I would say that, first, the Court can affirm on any ground supported by the record. Well, I understand that, but not when there are disputed questions of fact. Well, if the record – if there are disputed questions of fact, those could be – that would be a basis for a remand. But I think the question here is there are disputed questions of fact. Of course, they're disputed. But the question is, is the preponderance of the evidence that was in the record sufficient to support an affirmance? And I would suggest that it would. I don't get to decide that. I mean, I get to decide that if I'm a trial judge. Well, again, I would then point the Court to – Here's my problem, too, and these are some of the questions I had for your opponent. And that is, this time period, which you've now summarized and said the evidence was by a preponderance showing that the defendant was – the time was told. But tolling – fugitive tolling wasn't an argument in the case below, and that wasn't a focus or an opportunity for combat, if you will, at that level. And so we've got what I think is a disputed issue here of whether he self-deported or whether he was a fugitive and whether tolling applies. And do we really want to send this back for yet another round? Or do we say enough is enough, you've had your chance, time's up? Well, I think the appropriate thing would be in that instance to send it back. And let me just point the Court to two cases. As I was saying about Schimmel. In Schimmel, when the defendant said the government had waived the argument that it didn't present in the district court, the court of appeals, it was the Seventh Circuit, said that argument of waiver is not acceptable to the appeals court. It described that argument as frivolous. And it said that it would be unreasonable to – and this is a quote – it would be unreasonable to suggest that the government somehow waived every argument that its counsel could not produce at a moment's notice on his feet at a hearing. And then I would point to the case of U.S. v. Rhodes. Would it have been any surprise to you that a question of timeliness would have been advanced? That could not have been an ambush. It just jumps out at you. If you're having a parole or a vacation hearing at this time, that timeliness is going to be an issue. Your Honor, I would also point this – Is that right? I guess I made it as a statement. Let me ask you as a question. Was it surprising to you that timeliness was raised as an issue in front of the district court? It was raised for the first time in the midst of that hearing. Let me ask you a different question. Was it a surprise to you that timeliness was raised as an issue? Your Honor, I had not been prepared to address that question at that hearing. We went down to that hearing for purposes of addressing the self-representation issue. There had been a scheduled hearing, which the – at that hearing, there's a reference to it in the record where the defendant – Judge Liu refers in the record to you asked for a lawyer last time. That was – there had been a scheduled hearing, which was continued. It was continued because the defendant had asked for a lawyer. So the only thing that was on the calendar to be decided was whether or not there was going to be a lawyer? The calendar reflected nearly continued proceedings. And I – Because if you're right, that the only thing that the parties assumed was going to be at issue was whether or not he was allowed to have a lawyer, then we really have trouble because not only did Judge Liu decide that he couldn't have a lawyer, he imposes – he says, wait a minute, you violated supervised release. Well, I don't think the calendar reflected a limitation on what the judge could consider at the hearing. The hearing was calendared as further proceedings. And I've read the transcript that's provided in the ER here. At no point did either side say, well, wait a minute, we thought the only thing at issue here was self-representation. That's correct, Your Honor, but I'm just saying that when you – the court asked – when Your Honor asked me whether or not I was surprised, I – we had gone down for further proceedings. Often supervised release proceedings occur in stages. There are multiple hearings. I understand that, too, but I guess I'll ask the question directly and you can say yes or no. Were you surprised? I was not prepared for that matter to come up, so I guess the answer would be I was somewhat surprised by it in the sense that I wasn't prepared to respond to it fully. And I don't think the government should be penalized for that. You said yes, I was surprised. Okay. That was the answer. May I just point the court also to a case called United States v. Gross, which is a Fifth Circuit case, in which the district court did not – it's a speedy trial case. It's analogous, I think, to what we have here. In that case, the district court dismissed, based on its view – it denied the motion to dismiss an indictment. I mean, I've got – I think we've got the case law. Let me ask you one question specific to this case. I should know this, but I don't. If he serves the time to which he's now been sentenced on revocation of supervised release, when does he get out? Oh, dear. I don't know the date on which he would be – that would be – let's see, he went into custody on – I don't have the answer to that because it would depend also on what kind of credit he was given. Oh, yeah. I shouldn't say – when does the term expire? I understand good time will be – but you still don't know the answer, even independent of the good time question. Well, he was sentenced to 33 months. It would be 33 months from the time that he was transferred into federal custody, because he would begin getting – And how long ago was that? I mean, I could look it up, but I can't remember it off the top of my head. I believe he was transferred into federal custody sometime – well, it would have been sometime in 2011, possibly January. The hearing was May 10 of 2011. It would have been – Shortly before that, sometime before that. I have one quick question. I know you're over time, but I just want to get clear. If we go beyond this, if we don't be mad or mooted somehow otherwise, the – on this timing of the violation on the arrest, you know, or the allegation to, which is what Judge Lew relied on, the date that you alleged – that's alleged is January 31, on which he was convicted. But then you're arguing that the date that's relevant for timing purposes was when he was arrested, which would have been March of 2009. Now, what's your theory of that? First of all, are you saying that you can't swear out a warrant based on his arrest? You only have to wait until conviction? Or are you saying that you wait for the conviction before you bring it before the sentencing judge in this case, Judge Lew, because you want to have the conviction established before you bring it? And if that's the case, why are you alleging January 31 only and not putting in the date of the original arrest? It's confusing. I understand the court's question. We've got this go-around. There are enough complicated issues. I understand the court's question, absolutely. The probation officer drafted the petition, and the date that he cited was the date of the conviction. The violation is the commission of a federal offense, another offense. The conditions of supervised release prohibit the commission of other violations. But being arrested doesn't mean you've committed the violation. That's correct. Am I correct that March 9, 2009, the detainer was lodged. January 2011, the conviction took place. He was state. And May 2011, the revocation hearing took place. That's correct, Your Honor. And a defendant will not admit to a violation until there's been a resolution of the state crime or the federal crime that is the basis for the revocation. Yes, I think, yes. And just to go back to Judge Fisher's question, I think the probation office, as a custom, although the conduct itself is the violation, the conduct on March 9 would be the violation, of course the court is correct that the arrest does not establish that. And the government, if that were what were charged and it were presented to the district court as a violation before the conviction was obtained, the government would have to put on the proof of that. And as a practical matter, the probation officer waits for the conviction which becomes conclusive proof of that violation. That was what I assumed. That's what I assumed. I just wanted to get your explanation. Thank you. Well, and one last question. I just want to follow up on the timing. That is to say the reason I'm asking the timing question is it's a relatively short sentence on revocation. And if we send it back and then there's another appeal, I mean, he may be in jail on this revocation which may or may not be valid for another, I don't know, 12 months or so. I believe he's, he was sentenced to 30, he was sentenced to 33 months, Your Honor. Yeah. And I think he was. And he's probably served roughly 12 months of that, maybe 10 months of that. He's served less than a year of that. So he still has a substantial amount of time left on the sentence. Okay.  Thank you. Ms. Chen. Why don't we start with two minutes? First of all, Mr. Williams' projected release date is June 28th of 2013. So he has some time left to serve on this, which is a violation which I allege that the district court didn't have any jurisdiction to even adjudicate. So regardless of when he's going to get out or not get out, he's been in custody for quite some time. He started in custody on this offense basically in March of 2009 because the detainer was lodged and he couldn't bail out of county jail. And that was all lodged on the basis of the allegation of an illegal reentry in 2003, which the probation office, in its declaration, in support of the warrant, said I'm not really sure if he was deported or not. So, I mean, this man has been in custody for a very long time on an allegation that the government chose not to prove. It's not even clear that they could prove. We don't know to this day whether they could even prove allegation number one. But he did fail to report, right? He did. Well, we don't even know when he reentered, frankly. I know, but the problem I have with this case is that there are definitely evidentiary gaps. They're created by your client. He's the one that failed to stay in touch with probation. Now, they're trying to track him down and account for his whereabouts. He's the master of his own accountability. And so it's troublesome in these fugitive cases to find that the defendant is saying, well, you know, you didn't prove where I was when I was outside my reporting obligations. Except for the fact, Your Honor, that if you're outside the country, you're not required to report. And we just don't know when he was deported. He doesn't have to report that he is leaving the country? If you're deported, you don't have to report that you're leaving the country because you've been deported. Well, he wasn't deported. He said he self-deported. The second time the government is alleging he was deported. Okay? So the first time when he self-deported, he did, in fact, go to his probation office and say, I'm self-deporting. And the probation officer said, since I always suspected he was an illegal alien, I said, that's fine. Okay? So it's not a matter of he just sort of disappeared. But then there was no ability to confirm that self-deportation. There was. I mean, there was a notice from the consulate. Did she not ask him to confirm or in some way? He did. And, you know, he may have thought that confirming it to the INS was sufficient, which is there was confirmation to the INS. And so he may, you know, a lot of our clients don't always understand that they're not the same thing, that the INS is not the same thing as the federal government. But in any case, there was some confirmation. But not to the probation office? Not to the probation office. But the probation office was able to track down that information. I would really just say, though, really, that at this point, enough is enough. I mean, he has been, the idea that she was, that the government was surprised. The case number on this case is 1988. And this revocation hearing occurred in 2011. There were numerous hearings. The government repeatedly elected to not prove things. And so at a certain point, we just have to say, I think, enough is, in fact, enough. Or maybe we would put the moniker, catch me if you can, that your client was devising during this time. Thank both sides for your argument. United States v. Williams, now submitted for decision. Thank you, counsel. Last case on the argument calendar, Century Title.
judges: Zouhary, Fletcher, Fisher